# FILE

**IN CLERKS OFFICE**
**SUPREME COURT, STATE OF WASHINGTON**

DATE ___SEP 1 9 2013___



CHIEF JUSTICE

This opinion was filed for record
at __8:00 am__ on __Sept. 19, 2013__

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 87078-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| WILLIAM ANDREW KURTZ, | ) | |
| Petitioner. | ) | Filed ___SEP 1 9 2013___ |

MADSEN, C.J.—William Kurtz challenges the Court of Appeals decision affirming his conviction for possession and manufacturing of marijuana. He argues that the trial court erred in denying his request to raise a common law medical necessity defense. We hold that medical necessity remains an available defense to marijuana prosecution and that the Washington State Medical Use of Marijuana Act (the Act),[1] chapter 69.51A RCW, does not abrogate the common law. We reverse and remand for further proceedings.

### FACTS

In 2010, police executed a search warrant on petitioner William Kurtz's home and found marijuana and marijuana plants. The State charged Kurtz with manufacturing and

---

[1] The Medical Use of Marijuana Act was changed to the Washington State Medical Use of Cannabis Act in 2011. RCW 69.51A.900.

possession of marijuana. At trial, Kurtz attempted to present medical authorizations in support of a common law medical necessity defense and a statutory medical marijuana defense. The State moved in limine to prevent these defenses, contending that neither was available to him.

After reviewing the case law, the trial court refused to allow Kurtz to raise either defense. The jury found Kurtz guilty and he appealed. The Court of Appeals affirmed the ruling as to the defenses but remanded on a separate issue relating to an improperly calculated offender score. Kurtz then petitioned this court for review, arguing that the common law medical necessity defense for marijuana continues to be an available defense, under case law and after the enactment of the Act.

## ANALYSIS

Kurtz contends the trial court erred by not allowing him to present a common law medical necessity defense for his marijuana use. Specifically, he argues that the necessity defense was not abolished by this State's jurisprudence, nor was the defense superseded by the Act. The trial court's determination is a question of law which we review de novo. *State v. Fry*, 168 Wn.2d 1, 11, 228 P.3d 1 (2010).

The common law medical necessity defense for marijuana was first articulated in *State v. Diana*, 24 Wn. App. 908, 916, 604 P.2d 1312 (1979), by Division Three of the Court of Appeals. In *Diana*, the defendant argued a defense of medical necessity when he was charged with possession of marijuana. Following a discussion of the common law necessity defense, the court recognized a medical necessity defense could exist as a

defense to marijuana possession in very limited circumstances, relying in part on the legislature's passage of the "Controlled Substances Therapeutic Research Act," Laws of 1979, 1st Ex. Sess., ch. 176. *Diana*, 24 Wn. App. at 915-16. The court remanded for the trial court to determine whether the evidence presented supported the defense.[2] *Id.* at 916. Specifically, the court instructed that medical necessity would exist in that case if "(1) the defendant reasonably believed his use of marijuana was necessary to minimize the effects of multiple sclerosis; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease." *Id.* This medical necessity defense was subsequently recognized by Division One and Division Two. *See State v. Pittman*, 88 Wn. App. 188, 196, 943 P.2d 713 (1997) (discussing *Diana* and determining that the absence of a legal alternative that is as effective as marijuana is an implicit element of the necessity defense); *State v. Cole*, 74 Wn. App. 571, 578, 580, 874 P.2d 878 (adopting the reasoning of *Diana* and concluding the trial court usurped the jury's role in how it analyzed evidence of a potential medical necessity defense), *review denied*, 125 Wn.2d 1012, 889 P.2d 499 (1994).

The Court of Appeals subsequently called the necessity defense into question in *State v. Williams*, 93 Wn. App. 340, 347, 968 P.2d 26 (1998), *review denied*, 138 Wn.2d 1002, 984 P.2d 1034 (1999). The *Williams* court determined that an accepted medical use was an implicit element of the medical necessity defense, that the legislature was tasked with this determination, and that it had determined there was no accepted medical

---

[2] The charges in *Diana* were tried to the bench. *Diana*, 24 Wn. App. at 913.

use for marijuana when it classified marijuana as a schedule I substance. *Id.* at 346-47 (citing *Seeley v. State*, 132 Wn.2d 776, 940 P.2d 604 (1997) (holding that the statute designating marijuana as a schedule I controlled substance does not violate the Washington Constitution)). Thus, *Williams* concluded there could be no common law medical necessity defense for schedule I substances, including marijuana, and interpreted *Seeley* as overruling *Diana* and *Cole* by implication. *Id.* at 347.

One month before the *Williams* opinion was published, the people passed Initiative 692, which was later codified in chapter 69.51A RCW as the Act. The Act declared that the medical use of marijuana by qualifying patients is an affirmative defense to possession of marijuana. Former RCW 69.51A.040 (1999).[3] The Act also stated that "[t]he people of Washington state find that some patients with terminal or debilitating illnesses, under their physician's care, may benefit from the medical use of marijuana." Former RCW 69.51A.005 (1999).[4] *Williams* cited Initiative 692 in a footnote, without analyzing what effect, if any, this initiative might have on its view that inclusion of marijuana as a schedule I controlled substance reflected a legislative determination that marijuana had no accepted medical use.[5] *Williams*, 93 Wn. App. at 347 n.1.

---

[3] The legislature has since amended the statute to state that such a use "does not constitute a crime." RCW 69.51A.040.

[4] This language has since changed to state that the legislature finds "[t]here is medical evidence that some patients with terminal or debilitating medical conditions may, under their health care professional's care, benefit from the medical use of cannabis." RCW 69.51A.005(1)(a).

[5] In *State v. Butler*, 126 Wn. App. 741, 747, 750, 109 P.3d 493 (2005), the Court of Appeals concluded that *Williams* was still good law and that, in any event, the Act superseded any common law necessity defense.

We first address whether the Court of Appeals in *Williams* correctly concluded that *Seeley* implicitly abolished the common law medical necessity defense. In *Seeley*, we considered whether the legislature's classification of marijuana as a schedule I substance under the Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW, violated the Washington Constitution. *Seeley*, 132 Wn.2d at 786. Although the UCSA authorizes the board of pharmacy to schedule or reschedule substances considering, among other factors, the effect of the substance under former RCW 69.50.201 (1998), the legislature made the initial classification of marijuana as a schedule I substance.[6] *Seeley*, 132 Wn.2d at 784. With that in mind, we determined that there was substantial evidence to support the legislature's action. *Id.* at 813. While acknowledging the existence of a medical necessity defense, we did not comment on its validity or overrule *Diana*. *Id.* at 798. Rather, we simply stated, "The recognition of a potential medical necessity defense for criminal liability of marijuana possession is not relevant in this equal protection analysis." *Id.* Thus, we did not discuss the viability of the common law medical necessity defense as applied to marijuana.

In rejecting the medical necessity defense for marijuana, the *Williams* court stated that *Seeley* "makes it clear that the decision of whether there is an accepted medical use for particular dugs has been vested in the Legislature by the Washington Constitution." *Williams*, 93 Wn. App. at 347. This in incorrect. In fact, we stated that "the determination of whether new evidence regarding marijuana's potential medical use

---

[6] The UCSA was amended in 2013 to reflect the new "Pharmacy Quality Assurance Commission." This was not a substantive change.

should result in the *reclassification* of marijuana is a matter for legislative or administrative, not judicial, judgment." *Seeley*, 132 Wn.2d at 805-06 (emphasis added). Nothing in *Seeley* suggests that by classifying marijuana as a schedule I controlled substance, the legislature also made a finding that marijuana has no accepted medical benefit for purposes of the common law medical necessity defense.[7] *Cf. State v. Hanson*, 138 Wn. App. 322, 330-31, 157 P.3d 438 (2007) (determining that the Act only provided an affirmative defense to a drug crime and was not inconsistent with the scheduling statute). Indeed, the legislature defers to the state board of pharmacy for future additions, deletions, and rescheduling of substances which strongly suggests that the question of medical efficacy is subject to change. Former RCW 69.50.201(a). To conclude that a determination of medical use for scheduling purposes constitutes a legislative value determination of a substance for purposes of a necessity defense would yield the anomalous result that the necessity defense could be abrogated and reinstated whenever the board of pharmacy chooses to reclassify a controlled substance. We reject the

---

[7] In *Williams*, the court noted that substances are classified as schedule I if there "is (1) a high potential for abuse, (2) no currently accepted medical use in treatment in the United States, and (3) no accepted safety for use in treatment under medical supervision," under former RCW 69.50.203(a) (1993). *Williams*, 93 Wn. App. at 345. However, the court failed to discuss former RCW 69.50.203(b), which allows the board of pharmacy to place a substance in schedule I without the aforementioned findings, if the substance is "controlled under Schedule I of the federal Controlled Substances Act by a federal agency as the result of an internationally treaty, convention, or protocol." Marijuana is under Schedule I of the federal Controlled Substances Act and is a substance under the Single Convention on Narcotic Drugs of 1961, to which the United States is a party. 21 U.S.C. 812(c) sched. I, (c)(10); Single Convention on Narcotic Drugs, opened for signature Mar. 30, 1961, No. 6298, 18 U.S.T. 1407, 1967 WL 90243. Thus, the legislature's initial determination to classify marijuana as a schedule I substance does not necessarily rest on a determination that there is no accepted medical use.

contention that by scheduling a drug the legislature has also decided the efficacy of that substance for purposes of a medical necessity defense.

Our conclusion is bolstered by the passage of chapter 69.51A RCW, which evidences the legislature's belief that despite its classification of marijuana as a schedule I controlled substance there may be a beneficial medical use for marijuana. RCW 69.51A.005(1)(a) states, "The legislature finds that . . . [t]here is medical evidence that some patients with terminal or debilitating medical conditions may, under their health professional's care, benefit from the medical use of cannabis."[8] Accordingly, we agree with Kurtz that neither the legislature's classification of marijuana as a schedule I substance nor our decision in *Seeley* regarding legislative classification of marijuana abrogates the medical necessity defense.

We now turn to the question of whether the Act supersedes the common law medical necessity defense for marijuana. In general, Washington is governed by common law to the extent it is not inconsistent with constitutional, federal, or state law. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 76, 196 P.3d 691 (2008) "However, we are hesitant to recognize an abrogation or derogation from the common law absent clear evidence of the legislature's intent to deviate from the common law." *Id.* at 76-77. When "the provisions of a later statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force, the statute will be deemed to abrogate the common law." *State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas*

---

[8] As originally codified, this section stated, "The people of Washington state find that some patients with terminal or debilitating illnesses, under their physician's care, may benefit from the medical use of marijuana." Former RCW 69.51A.005.

7

*County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973) (citing *State v. Wilson*, 43 N.H. 415 (1862)).

The Act contains no language expressing a legislative intent to abrogate the common law. To the contrary, a 2011 amendment to chapter 69.51A RCW added that "[n]othing in this chapter establishes the medical necessity or medical appropriateness of cannabis for treating terminal or debilitating medical conditions as defined in RCW 69.51A.010," suggesting the legislature did not intend to supplant or abrogate the common law. RCW 69.51A.005(3). In explaining the purpose of the Act the legislature stated that "[h]umanitarian compassion necessitates that the decision to use cannabis by patients with terminal or debilitating medical conditions is a personal, individual decision, based upon their health care professional's professional medical judgment and discretion." RCW 69.51.005(1)(b). To hold that this Act limits existing defenses for medical necessity would undermine the legislature's humanitarian goals.

The State argues, however, that because the legislature spoke directly to the purpose of the common law necessity defense, it intended to abrogate the common law. The State relies on two United States Supreme Court cases for this rule of construction, *City of Milwaukee v. Illinois*, 451 U.S. 304, 315, 101 S. Ct. 1784, 68 L. Ed. 2d 114 (1981), and *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625-26, 98 S. Ct. 2010, 56 L. Ed. 2d 581 (1978). These cases concern the test for determining whether federal acts displace federal common law and general maritime law and do not address the effect of legislative action on Washington's common law. *Milwaukee*, 451 U.S. at 315-17; *Mobile*

8

*Oil*, 436 U.S. at 625-26. As *Milwaukee* notes, "[f]ederal courts, unlike state courts, are not general common-law courts and do not possess a general power to develop and apply their own rules of decision"; rather federal common law is developed in only restricted instances. 451 U.S. at 312-13 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). The federal common law analysis proceeds on the principle that Congress, not federal courts, is to articulate the standards to be applied as a matter of federal law. *Id.* at 316. In contrast, common law is not a rarity among the states and is often developed through the courts, as was the case with medical necessity for marijuana. *Diana*, 24 Wn. App. at 916. Indeed, Washington has several statutory provisions addressing the authority of common law. *See, e.g.*, RCW 4.04.010; RCW 9A.04.060. Because the federal and state schemes differ, federal cases are unhelpful. In addition, the "directly speaks" language on which the State relies is not a part of the test we outlined in *Potter* and we decline to apply it here.

The State also contends that each element of the medical necessity defense is addressed by the Act and establishes inconsistencies between the two. As to the requirement that a defendant provide medical testimony to support his belief that use of marijuana was medically necessary, the State notes that the Act similarly requires a defendant to obtain authorization for use from a qualifying physician. As to the balancing of harms requirement, the state contends this element is met by the Act's limitation on the quantity of marijuana that a patient may possess. Responding to the final requirement, that no drug is as effective at treatment, the State notes an individual

under the Act is not required to show there are no other drugs as effective. While some of these elements are indeed similar to the common law defense, they are not identical and are not clearly inconsistent. For example, the fact that the Act does not require proof that no other drug is as effective simply means the Act is broader in that respect. Other elements in the Act may overlap with the common law defense, but are not identical nor "so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force." *Madden*, 83 Wn.2d at 222.

The State points to other aspects of the Act that it views as "obvious inconsistencies." Suppl. Br. of Resp't at 11. For example, the State hypothesizes that an individual who obtains authorization by an unqualified physician would not satisfy the Act but will be able to assert the common law defense. The State also posits that an individual who possesses a certain amount of marijuana may not have a defense under the Act but would under the common law. While correct, these examples do not show inconsistencies, but rather demonstrate that the common law may apply more broadly in some circumstances.

The State also asserts that the statutory language and initiative make it clear that the Act was intended to replace the common law defense with an affirmative defense for certain individuals with terminal or debilitating illnesses. The State relies on *Washington Water Power Co. v. Graybar Electric Co.*, 112 Wn.2d 847, 855, 774 P.2d 1199, 779 P.2d 697 (1989), where this court determined that the legislature intended to preempt common law product liability claims through passage of the "Washington Product Liability Act"

(WPLA), chapter 7.72A RCW. However, there we noted that the scope of the statue defining product liability claims could not have been broader and there was evidence WPLA was intended to eliminate confusion surrounding product liability by creating a single cause of action. *Wash. Water Powr Co*, 112 Wn.2d at 853-54. Here, the Act is not so broad as to cover every situation of marijuana use that might arise. *See, e.g., Fry*, 168 at 13 (holding that the defendant did not qualify under the Act because he did not have one of the listed debilitating conditions).

Moreover, in 2011 the legislature amended the Act making qualifying marijuana use a legal use, not simply an affirmative defense. RCW 69.51A.040. A necessity defense arises only when an individual acts contrary to law. Under RCW 69.51A.005(2)(a), a qualifying patient "shall not be arrested, prosecuted, or subject to other criminal actions or civil consequences under state law based solely on their medical use of cannabis, notwithstanding any other provision of law." One who meets the specific requirements expressed by the legislature may not be charged with committing a crime and has no need for the necessity defense. Only where one's conduct falls outside of the legal conduct of the Act, would a medical necessity defense be necessary. The 2011 amendment legalizing qualifying marijuana use strongly suggests that the Act was not intended to abrogate or supplant the common law necessity defense.

Finally, the State contends the legislature is assumed to be aware of the common law under *Madden*, 83 Wn.2d at 222, and would have expressly saved the common law defense if that was its intent. This argument inverts the requirements in *Potter;* there

must be clear evidence of the legislature's intent to deviate from the common law, not clear evidence to preserve it.

When a question arises as to whether a statute abrogates the common law, there is likely to be overlap. *See In re Estate of Tyler*, 140 Wash. 679, 689, 250 P. 456 (1926) ("'No statute enters a field which was before entirely unoccupied.'" (quoting HENRY CAMPBELL BLACK, HANDBOOK ON CONSTRUCTION AND INTERPRETATION OF THE LAWS 233 (1896))). But under our holdings, the relevant question is whether the common law and statute are inconsistent or the legislature clearly intended to deviate from the common law. Where, as here, there was no statement in the statute expressing such intent, and no inconsistencies between the two, we hold that the common law defense of medical necessity continues to be an available defense if there is evidence to support it.

The State argues, though, that even if the necessity defense is theoretically available, Kurtz could not rely on the defense because the Act provides a legal avenue for his marijuana use. As discussed, the Court of Appeals in *Diana* provided a three part summary of the marijuana necessity defense. *Diana*, 24 Wn. App. at 917. In summarizing the rule, *Diana* referred to two authorities: the *Handbook on Criminal Law* and the Model Penal Code (MPC). *Diana*, 24 Wn. App. at 913-14 (citing WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., HANDBOOK ON CRIMINAL LAW 381-83, 386 (1972); MODEL PENAL CODE § 3.02 (Proposed Official Draft (1962))). Under the MPC, conduct an actor believes is necessary to avoid a harm or evil to himself or another is justifiable if:

(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

MODEL PENAL CODE § 3.02(1). The court cited the *Handbook on Criminal Law* for the principle that the defense is not applicable where a legal alternative is available to the accused. *Diana*, 24 Wn. App. at 913-14 (citing LAFAVE & SCOTT, *supra*, at 387). The United States Supreme Court also addressed necessity and duress defenses and noted that "[u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980) (quoting LAFAVE & SCOTT, *supra*, at 379). Thus, implicit in the marijuana necessity defense is whether an individual has a viable legal alternative to the illegal use of marijuana. In other words, the mere existence of the Act does not foreclose a medical necessity defense, but it can be a factor in weighing whether there was a viable legal alternative to a violation of the controlled substances law. The State's view that Kurtz must show "'no other law provides exceptions or defenses'" misstates the MPC, and adds language to the test that *Diana* adopted.[9] Suppl. Br. of Resp't at 14.

---

[9] The dissent contends that the legislature rejected § 3.02(1) of the MPC, and so it was inappropriate for courts to adopt and apply the necessity defense. Dissent at 7. The dissent's argument is speculative at best. Although the judiciary committee proposed adding a "justification" defense that closely mirrored § 3.02(1), there is no legislative history explaining

Here, the trial court did not consider whether the evidence supported a necessity defense as outlined in *Diana* , including whether Kurtz had a viable legal alternative. Instead, the record suggests that the trial court denied the common law defense concluding it was unavailable after *Butler* and denied the statutory defense because Kurtz did not obtain timely medical authorizations. Accordingly, we reverse the Court of Appeals and remand to the trial court to determine whether Kurtz presented sufficient evidence to support a medical necessity defense, including whether compliance with the Act was a viable legal alternative for Kurtz. If the evidence supports the necessity defense, Kurtz is entitled to a new trial.

why that provision was not adopted. JUDICIARY COMM. OF WASH. LEGIS. COUNCIL, LEGISLATIVE COUNCIL'S JUDICIARY COMMITTEE, REVISED WASHINGTON CRIMINAL CODE, at ii (Dec. 3, 1970). "[W]hen the Legislature rejects a proposed amendment . . . we will not speculate as to the reason for the rejection." *Spokane County Health Dist. v. Brockett*, 120 Wn.2d 140, 153, 839 P.2d 324 (1992) (citing *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 63-64, 821 P.2d 18 (1991)). In the absence of any statutory language or history, we should not assume that the legislature rejected the necessity defense when it chose not adopt § 3.02(1). Further, the dissent's assertion that *Diana* and this opinion rely heavily on § 3.02(1) is inaccurate. The defense adopted in *Diana* was based derived from several sources, including § 3.02(1). *Diana*, 24 Wn. App. at 914-15 (citing, *e.g.*, LAFAVE & SCOTT, *supra*, at 381-83, 386; *United States v. Holmes*, 26 F. Cas. 360 (C.C.E.D. Pa. 1842); *United States v. Ashton*, 24 F. Cas. 873 (C.C.D. Mass. 1834); *People v. Lovercamp*, 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (1974)).

When the legislature is otherwise silent, courts may look to the common law, which shall supplement all penal statutes. RCW 9A.04.060. As discussed in this opinion, the United States Supreme Court has recognized a common law necessity defense. *United States v. Bailey*, 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980) (discussing the common law necessity defense). Therefore, even if we were to conclude, as the dissent suggests, that the legislature rejected § 3.02(1) of the MPC, the common law necessity defense as formulated in *Diana* has not been rejected by the legislature.

CONCLUSION

We hold that the common law medical necessity defense for marijuana remains available following the Medical Use of Marijuana Act. We remand to the trial court for further proceedings consistent with this opinion.

No. 87078-1

Madsen, C.J.

WE CONCUR:

Stephen, J.

González, J.

Chambers, J.P.T.

16

*State v. Kurtz*

No. 87078-1

OWENS, J. (dissenting) -- While I sympathize with William Kurtz's unfortunate situation, I am compelled to dissent because the common law defense of necessity is predicated on a lack of legal alternatives. Washington voters have provided a comprehensive statutory scheme for the use of medical marijuana, enacted by initiative in 1998. Because individuals in this state have a legal way of using medical marijuana, the previously articulated common law defense of medical necessity for marijuana use is no longer appropriate. Therefore, I respectfully dissent.

The common law necessity defense has existed for hundreds of years for defendants who were forced to violate the law to avoid a greater harm. WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW 444 (2d ed. 1986). To assert the

necessity defense, a defendant must reasonably believe the unlawful action was necessary to avoid harm. *State v. Diana*, 24 Wn. App. 908, 914, 604 P.2d 1312 (1979); LAFAVE & SCOTT, *supra*, at 446. In addition, the harm the defendant sought to avoid must outweigh the harm caused by a violation of the law. *Diana*, 24 Wn. App. at 914; LAFAVE & SCOTT, *supra*, at 446-47. Finally, and most importantly for our analysis of this case, the defense cannot be asserted when "a legal alternative is available to the accused." *Diana*, 24 Wn. App. at 913-14; LAFAVE & SCOTT, *supra*, at 448-49.

A common example of the necessity defense is a prisoner who escapes from a prison on fire. *See People v. Whipple*, 100 Cal. App. 261, 279 P. 1008 (1929). Such a prisoner could theoretically defend against a charge of prison escape by arguing that there was no legal alternative to avoid severe injury or death. *Id.* at 263 (noting a prominent 1736 treatise on criminal law that states, "'[i]f a prison be fired by accident, and there be a necessity to break prison to save his life, this excuseth the felony.'" 1 MATTHEW HALE, THE HISTORY OF THE PLEAS OF THE CROWN 611 (1736), *available at* http://archive.org/details/historiaplacitor01hale). In contrast, a prisoner who escapes from prison because he claims the conditions amounted to brutal and inhumane treatment cannot assert the defense of necessity when there is no record that he attempted to address prison conditions through lawful means. *Id.* at 262, 265.

Thus, the necessity defense is specifically predicated on a defendant's lack of legal alternatives. The United States Supreme Court has made this clear for the defenses of necessity and duress: "if there was a reasonable, legal alternative to violating the law . . . the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). As the Court of Appeals has stated, the requirement to show a lack of legal alternatives is "[n]ot only . . . consistent with existing Washington case law, it is mandated by common sense." *State v. Pittman*, 88 Wn. App. 188, 196, 943 P.2d 713 (1997).

When the Court of Appeals created the medical necessity defense for marijuana use in 1979, there was no provision for legal medical use of marijuana to treat the defendant's multiple sclerosis. *Diana*, 24 Wn. App. at 915. Accordingly, the Court of Appeals created a three-part medical necessity defense, including a requirement that defendants present evidence that there was no legal alternative to using marijuana illegally to treat their symptoms. *Id.* at 916. Specifically, defendants had to show that no legal drug was as effective as marijuana in minimizing the effects of their disease. *Id.* Defendants that made such a showing could assert the medical necessity defense because they had no legal alternative to use marijuana for medical purposes.

But in 1998, the people of this state passed Initiative Measure 692 (the Washington State Medical Use of Marijuana Act,[1] chapter 69.51A RCW), which provided a legal alternative for individuals to use marijuana for medical purposes. Consequently, the crucial underpinning to the necessity defense—the lack of legal alternatives—no longer existed for medical marijuana use. This change is particularly evidenced by *Diana*'s requirement that defendants show that no legal drug was as effective as marijuana in minimizing the effects of their disease. Logically, I do not see how Kurtz can show that no legal drug is as effective as marijuana when marijuana itself is now allowed for medical purposes. The specific necessity defense designed by the Court of Appeals for medical marijuana use has become moot by its own terms.

Courts consistently reiterate that defendants asserting the necessity defense must show that they lacked legal alternatives. The Court of Appeals has held that a person eluding a pursuing police vehicle to help a friend in danger cannot assert the necessity defense when there is a legal alternative: seeking that police officer's assistance. *State v. Gallegos*, 73 Wn. App. 644, 651, 871 P.2d 621 (1994). In *Gallegos*, the court reviewed the case of a man who believed his female friend was in danger and began speeding toward her location. *Id.* at 646. When he was pulled over

---

[1] The Medical Use of Marijuana Act was renamed the Washington State Medical Use of Cannabis Act in 2011. RCW 69.51A.900.

by a police officer en route, he yelled to the officer that he was okay and that the officer should follow him. *Id.* He then sped off. *Id.* When he was later charged with attempting to elude a pursuing police vehicle, the court held that he could not assert the necessity defense because he had a legal alternative—he could have explained the situation to the officer and asked for help for his friend. *Id.* at 651. This was a reasonable legal alternative that would have averted harm to his friend without violating the law against eluding a pursuing police officer.

The Alaska Supreme Court has held that stealing highway construction equipment to free a stranded vehicle is unnecessary when there is a legal alternative: calling a tow truck. *Nelson v. State*, 597 P.2d 977, 980 (Alaska 1979). In *Nelson*, an Alaska man "borrowed" highway construction equipment to free his truck that was stuck in nearby mud. *Id.* at 977-78. His unsuccessful attempt to free his truck resulted in significant damage to the construction equipment, and he was charged with destruction of personal property and joyriding. *Id.* at 978. He attempted to assert the necessity defense, explaining that he believed his truck was in danger of tipping over and being damaged. *Id.* at 980. The court held that he could not assert the necessity defense because he had several legal alternatives to unlawfully using the construction equipment, noting that multiple people had stopped and offered assistance to the defendant, including rides or offers to telephone state troopers or a tow truck. *Id.*

5

Similarly, the Ninth Circuit Court of Appeals has held that trespassing on a military base to warn fellow trespassers of impending danger from a military test exercise is unnecessary when there is a legal alternative: informing the military about the presence of the other trespassers. *United States v. Mowat*, 582 F.2d 1194, 1208 (9th Cir. 1978). In *Mowat*, a group of individuals were charged with trespassing for entering an island military base to protest military actions. *Id.* at 1197. One of the individuals who entered the base later than his cohorts asserted a necessity defense, claiming that he entered the military base to warn his friends about an impending bombing of the island. *Id.* at 1208. The court held that "the assertion of the necessity defense requires that optional courses of action appear unavailable" and that the defendant could not assert the defense because he "made no attempt to secure consent to enter the island, nor did he take the simple step of notifying the officials on the island who could have notified [his friends]." *Id.*

These cases are unified by the principle that the necessity defense is unavailable to defendants who fail to avail themselves of reasonable legal alternatives. The necessity defense is not an unlimited license to violate the law to avoid a potential harm. Rather, the defense exists to protect defendants who truly have no legal alternatives.

Of course the overall common law necessity defense continues to protect defendants who are forced to violate the law to avert a greater harm. But the narrow

6

medical necessity defense developed in *Diana* specifically for individuals with a medical need to use marijuana no longer makes sense in a state that specifically provides a legal method for the medical use of marijuana. I would hold that a defendant wishing to assert a necessity defense would have to prove the broader elements that have developed over hundreds of years—including the lack of legal alternatives—not the narrow medical necessity test developed in a context that no longer exists. In Kurtz's case, the record shows that he was later able to obtain appropriate authorization to legally use medical marijuana for his serious condition. He had a legal alternative to violating the law and thus does not qualify for the necessity defense.

In addition, both *Diana* and the majority opinion rely heavily on section 3.02 of the Model Penal Code (MPC) (Proposed Official Draft (1962)), despite the fact that the legislature considered and *rejected* that exact provision. A brief review of the legislature's consideration of the MPC is instructive. In 1967, the Washington State Senate delegated the responsibility of recommending revisions to the criminal code of 1909 to the Judiciary Committee of Washington's Legislative Council. JUDICIARY COMM. OF WASH. LEGIS. COUNCIL, LEGISLATIVE COUNCIL'S JUDICIARY COMMITTEE, REVISED WASHINGTON CRIMINAL CODE at ii (Dec. 3, 1970). In 1970, the judiciary committee published a proposed draft of the revised criminal code that adopted MPC section 3.02's necessity defense, calling it a "justification" defense. *Id.* at ii, 64.

However, when the legislature adopted the criminal code of 1965, it did not include the justification defense. LAWS OF 1975, 1st Ex. Sess., ch. 260, at 828-30. Since MPC section 3.02 was explicitly proposed by the judiciary committee and then rejected by the full legislature, it seems inappropriate for the courts to subsequently adopt and apply that exact test.

Furthermore, I find no way to avoid the conclusion that the Medical Use of Marijuana Act abrogated the common law defense. A statute abrogates the common law when "'the provisions of a . . . statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force.'" *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 77 196 P.3d 691 (2008) (alteration in original) (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 225, 517 P.2d 585 (1973)). In this case, the Medical Use of Marijuana Act created a defense to charges of use or possession of marijuana if the defendant can show that he or she was using the marijuana for medical purposes—the exact issue addressed by the common law defense. Because the Medical Use of Marijuana Act addresses the very concern addressed by the common law, the two cannot coexist. The Medical Use of Marijuana Act sets out a comprehensive structure for the defense, including the qualifying conditions or diseases, the amount of marijuana allowed, and documentation of a physician's recommendation. As a result of these detailed requirements, the statutory defense is much narrower than the common law defense. The common law did not

require any communication with a physician nor did it place a limit on the amount of marijuana at issue. Therefore, the provisions of the Medical Use of Marijuana Act's defense are so inconsistent with the prior common law that both cannot simultaneously be in force. It does not make sense that the state would create a significantly narrower and more detailed statutory defense if it did not mean to replace the broader common law defense.

Moreover, allowing the common law defense to coexist with the statutory defense would frustrate the purpose of the Medical Use of Marijuana Act. When determining whether a statute is exclusive, this court has repeatedly indicated that it must strive to uphold the purpose of the statute. *See, e.g., Potter*, 165 Wn.2d at 87; *see also Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 855, 774 P.2d 1199, 779 P.2d 697 (1989). In passing the Medical Use of Marijuana Act voters set up a structure to allow medical marijuana, but they specifically limited the defense to individuals using medical marijuana under a doctor's supervision. If the court were to uphold the broader common law defense without the requirement of a doctor's supervision, the court would frustrate the purpose of the voters that specifically added that requirement for the medical use of marijuana.

I respectfully dissent.

Owens, J.

Fairhurst, J.

Wiggins, J.

10