IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35029-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| GABRIEL RUELAS, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Gabriel Ruelas appeals his conviction for possession of marijuana over 40 grams. At trial, he asserted it was necessary for him to provide the marijuana for his mother, who was in pain and dying of cancer. Mr. Ruelas requests a new trial and argues the trial court erred in three ways: (1) in admitting his postarrest, pre-*Miranda*[1] statements, (2) in requiring a medical expert witness for his necessity defense, and (3) by precluding his medical expert witness from testifying because his proposed testimony was first disclosed after the State rested. Finding no error, we affirm.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS

On November 10, 2015, Sergeant Oscar Garcia stopped Mr. Ruelas for speeding. Mr. Ruelas rolled down his window and gave Sergeant Garcia his license and registration. Sergeant Garcia smelled marijuana coming from the pickup truck. He asked Mr. Ruelas about the smell and asked him to roll down his rear window. Mr. Ruelas complied, and Sergeant Garcia saw a large garbage bag containing marijuana. Sergeant Garcia then arrested Mr. Ruelas for felony possession of marijuana.

Before advising Mr. Ruelas of his *Miranda* rights, Sergeant Garcia processed paperwork to impound the truck. He asked Mr. Ruelas who owned the truck. Mr. Ruelas answered, "'My sister.'" Clerk's Papers (CP) at 40. Mr. Ruelas then explained that he was returning to his home in Edwall, Washington, after having cleaned the marijuana. He explained in detail how the marijuana was packaged to make clear to Sergeant Garcia that he was not selling or trafficking it. Mr. Ruelas said he had a medical marijuana card but did not provide one. Sergeant Garcia asked Mr. Ruelas where he had cleaned the marijuana. Mr. Ruelas answered that he grew the marijuana at his home, had taken it to his sister's to clean it, and was in the process of taking it back home. Sergeant Garcia then read Mr. Ruelas his *Miranda* rights.

No. 35029-1-III
*State v. Ruelas*

On February 26, 2016, the State charged Mr. Ruelas with one count of possession of marijuana over 40 grams. Trial was set for May 24, 2016. On May 9, 2016, the parties agreed to continue the trial for Mr. Ruelas to review an offer and prepare motions.

On June 13, 2016, the trial court held a CrR 3.5 hearing. The court found that Mr. Ruelas's initial pre-*Miranda* statement was the result of a routine processing question and that his additional statements were made either spontaneously and not in response to a question likely to produce an incriminating response. The court denied Mr. Ruelas's suppression motion.

After the court's ruling, Mr. Ruelas requested a continuance to find an expert witness. Mr. Ruelas informed the court:

> Judge, we're anticipating that there's a medical marijuana defense on this particular case. And so the Court's aware, there's still the necessity defense and we have an expert witness that I have to retain yet, but who will testify that the amounts that my client had were consistent with the use for the—for himself and the two other people he was providing for.

Report of Proceedings (RP) at 29. Trial was reset for August 23, 2016.

On July 20, 2016, Mr. Ruelas requested a second continuance to retain an expert witness, and explained:

3

>        We are requesting one more continuance of trial. . . .  I think you
> understand that this is a medical marijuana case.  We do plan on putting on
> the defense of necessity for going over the allowed limit.  We have been in
> contact or trying to get in contact with Greg Carter.  He is going to be our
> expert witness hopefully to testify at trial; however, he is medical director at
> St. Luke's and he's very difficult to get in contact with.

RP at 36-37.  Trial was reset for October 25, 2016.

On October 7, 2016, Mr. Ruelas requested a third continuance.  He explained,

"There are some medical issues that I think will be coming to light at trial for which we

will require an expert."  RP at 44.  He continued, "If this is indeed going to be ramping up

for trial then our search for an expert will actually be fruitful at this point.  There was no

point in hiring an expert when we were anticipating a possible resolution."  RP at 45.  The

trial court denied Mr. Ruelas's third continuance.

On October 18, 2016, Mr. Ruelas filed his final witness list.  The list did not

include a medical expert.

Trial began on October 25, 2016.  The court addressed motions in limine and

questioned Mr. Ruelas about his defense of medical necessity.  Mr. Ruelas explained that

he was asserting the common law defense of medical necessity, not the statutory defense

under the Washington State Medical Use of Cannabis Act, chapter 69.51A RCW.[2]  The

---

[2] The Medical Use of Marijuana Act was changed to the Washington State Medical Use of Cannabis Act in 2011.  RCW 69.51A.900.

State objected to the defense on the basis that Mr. Ruelas could not lay a proper foundation without having a medical expert testify. The court agreed, and reasoned:

> [*Pittman*[3]] says, "The defendant will be required to show that there is no equally effective legal drug." You would have to have, I believe, medical knowledge as to what legal drugs are out there on the market that may or may not be as effective as to treat the symptoms that marijuana has in the case. I feel that that element and perhaps one of the others would require the expert testimony.

RP at 140.

The State put on its evidence and rested. Mr. Ruelas then told the court that Dr. Carter was available to testify telephonically, possibly at noon. Mr. Ruelas said that Dr. Carter had reviewed Mr. Ruelas's mother's medical records, and would testify, "given [her] medical condition [that she was dying of cancer] . . . there was no other alternative . . . for treating [her] symptoms . . . ." RP at 217-18.

The State objected:

> [Mr. Ruelas has] had eight months with the case. We have no discovery with regards to this potential witness being even an option or that he's going to testify. . . .
>      . . . .
>      . . . The fact that he's not available to come in and testify, that's another issue. The State would object to any telephonic testimony. . . .
>      . . . .

---

[3] *See State v. Pittman*, 88 Wn. App. 188, 196, 943 P.2d 713 (1997).

5

So the fact he has in his possession 1800 grams of marijuana, . . . it is quite shocking that he wants to throw this name out and surprise the second day of trial.

RP at 219-20.

Mr. Ruelas responded:

I'm not inviting this, but I think the appropriate remedy is not the exclusion of the witnesses [sic], that might be viewed as being an extraordinary remedy and should not be taken. I think the Government, if they need time to prepare for this witness, can ask for a continuance to adequately prepare for the witness. . . .

RP at 221.

The court weighed whether to continue the trial or to preclude Dr. Carter

from testifying:

[W]e just heard about this doctor this morning, day two of trial, and I do think it's significantly late. The case was filed . . . eight months ago. . . .
. . . .
. . . And I appreciate this witness is key to the defense and if the witness could testify as to what I've been told he'll testify. That would make that defense available. The necessity defense.
And I do think [the late disclosure is] a big problem and I don't think the Court has any alternative but to exclude this witness. I appreciate that would . . . prejudice the defendant's ability to present a defense, but it's not any type of an unfair prejudice to the defendant because he and his counsel have had a long time with which to get the witnesses [sic] . . . . *And it would . . . impose an extreme burden on the Court to have a delay and it would result in substantial delay.*
. . . .
. . . *The problem is there's two sides in the case that should have a right to a fair trial, and that would include the prosecution. The*

> *prosecution . . . may want to bring in their own witness. They may want to think about after they talk to this witness, what he says, and conduct some discovery to see whether there may be some other witness that might disagree with this Dr. Carter.*
>
> And to allow the witness to testify and to proceed with trial is unfair to the prosecution in the case here. . . . And I don't know what the Court of Appeals will do . . . .
>
> . . . [But reversing under these circumstances] would almost render it impossible for a Trial Court to effectively manage a court calendar and do their job. It would, I think, encourage lawyers to not do their job.
>
> So I'm excluding the witness. . . .

RP at 224, 229-32 (emphasis added).

The trial resumed, closing arguments were given, and the jury found Mr. Ruelas guilty. He appealed, and we granted oral argument.

During oral argument, Mr. Ruelas conceded the first issue on appeal. Mr. Ruelas conceded that his pre-*Miranda* statements to Sergeant Garcia were not prejudicial. The statements were consistent with his theory of the case—that the marijuana was for his mother who was dying of cancer. Mr. Ruelas even emphasized these statements during his cross-examination of Sergeant Garcia.

## ANALYSIS

A. THE NECESSITY DEFENSE REQUIRED MEDICAL TESTIMONY

Mr. Ruelas argues the trial court denied him his constitutional right to present a defense when it erroneously ruled that a medical expert was required for him to assert the

defense of necessity. Mr. Ruelas's constitutional argument fails because the trial court correctly determined that his necessity defense required medical testimony.

"Generally, necessity is available as a defense when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law." *State v. Diana*, 24 Wn. App. 908, 913, 604 P.2d 1312 (1979). The common law defense of necessity is available even though Washington has legalized marijuana. *State v. Kurtz*, 178 Wn.2d 466, 476-77, 309 P.3d 472 (2013).

A defendant asserting the necessity defense must prove four elements by a preponderance of the evidence. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 18.02, at 292 (4th ed. 2016). The four elements are: (1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize the harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, (3) the threatened harm was not brought about by the defendant, and (4) no reasonable legal alternative was available that is as effective as marijuana.[4] *Id.*; *see also Pittman*, 88 Wn. App. at 194. Only the fourth element is at issue here.

---

[4] WPIC 18.02 states the last element as: "no reasonable legal alternative existed."

The history of the medical necessity defense for marijuana in Washington had been in flux until about five years ago.[5] But when addressed, courts have stated that expert medical testimony is required to prove the fourth element. The medical necessity defense for marijuana was first recognized in *Diana*. *Diana*, 24 Wn. App. at 916. There, the defendant was charged with possession of marijuana but argued the defense of medical necessity. *Id.* at 909, 912. The court remanded to the trial court to determine if the defense applied, largely using the four element test described above. *Id.* at 916. The court went on to state, "To support the defendant's assertions that he reasonably believed his actions were necessary to protect his health, corroborating medical testimony is required." *Id.*

In *Williams*, the defendant was charged with unlawful manufacturing of marijuana, possession with intent to deliver, and possession of marijuana. *State v. Williams*, 93 Wn.

---

That has been modified for marijuana cases per *Pittman*, 88 Wn. App. at 194.

[5] *See, e.g.*, *Diana*, 24 Wn. App. at 916 (establishing the necessity defense); *State v. Cole*, 74 Wn. App. 571, 578, 874 P.2d 878 (1994) (adopting *Diana*'s reasoning); *Pittman*, 88 Wn. App. at 195-96 (adopting *Diana*'s reasoning); *State v. Williams*, 93 Wn. App. 340, 345-46, 968 P.2d 26 (1998) (holding that, with respect to schedule I drugs, a common law medical necessity defense does not exist), *abrogated by Kurtz*, 178 Wn.2d 466; *State v. Butler*, 126 Wn. App. 741, 750, 109 P.3d 493 (2005) (holding that the statutory affirmative defense in the Medical Use of Cannabis Act superseded the common law medical necessity defense), *abrogated by Kurtz*, 178 Wn.2d 466; *Kurtz*, 178 Wn.2d at 477 (holding the common law defense of medical necessity is still available even after the Medical Use of Cannabis Act).

App. 340, 343, 968 P.2d 26 (1998). The defendant asserted the defense of medical necessity. *Id.* Although *Williams* ultimately held that there is not a defense of medical necessity with respect to schedule I drugs, it first analyzed the medical necessity defense. *Id.* at 346-47. In its analysis, the *Williams* court recognized the test established by *Diana* and later adopted by *Cole*. *Id.* at 346. The *Williams* court also adopted *Diana*'s reasoning that corroborating medical evidence is required to satisfy the test. *Id.* The court held:

> [T]here would also have to be corroborating medical evidence that no other legal drugs were as effective in minimizing the effects of the disease. Although this element was not stated in the prior case law, it would make sense that this element be expressed by an expert who knew the qualities of other drugs, not just the preference of the defendant.

*Id.* at 347. Although part of *Williams*' holding has been overruled, this part has yet to be changed. And its reasoning is sound. We conclude the trial court did not err in determining that Mr. Ruelas's necessity defense required medical expert testimony.[6]

    B.    NO ABUSE OF DISCRETION FOR PRECLUDING WITNESS TESTIMONY

---

[6] Mr. Ruelas also argues he did not need to obtain an expert witness to assert the statutory defense under the Medical Use of Cannabis Act. We do not address this argument because Mr. Ruelas clearly represented to the trial court that he was asserting his necessity defense based on the common law application, not the Medical Use of Cannabis Act. "Arguments or theories not presented to the trial court will generally not be considered on appeal." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

Mr. Ruelas argues the trial court erred in precluding Dr. Carter from testifying. We disagree.

A trial court may sanction a criminal defendant under CrR 4.7(h)(7)(i) for failing to comply with discovery deadlines by excluding the testimony of a defense witness. *State v. Hutchinson*, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998). But exclusion of evidence is an extraordinary remedy, one that must be applied narrowly. *Id.* at 882. We review a trial court's choice of CrR 4.7 sanctions for an abuse of discretion. *Id.*

In order to preclude witness testimony because of a discovery violation, the court must weigh four factors:

> (1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the prosecution will be surprised or prejudiced by the witness's testimony; and (4) whether the violation was willful or in bad faith.

*Id.* at 883.

Effectiveness of less severe sanctions: The trial court found that a less severe sanction, such as a substantial trial continuance, would not be effective. The court determined that a substantial trial continuance would burden the court's ability to manage its own trial schedule and encourage late witness disclosures. We note that the jury had been empaneled and it had heard most of the evidence. A substantial trial continuance

11

would have required the jury to return weeks or months later after the State interviewed Dr. Carter and then procured its own medical expert. By that time, the jury likely would have forgotten much of the evidence the State presented. The trial court reasonably concluded that a lesser sanction would not be effective.

Impact of witness preclusion on evidence and case outcome: The trial court found that precluding Dr. Carter from testifying would prevent Mr. Ruelas from presenting his necessity defense. The court further concluded that this prejudice was not unfair because Mr. Ruelas had eight months to obtain a medical expert. We agree. We also question whether precluding Dr. Carter from testifying impacted the outcome of the case. Although Dr. Carter would have testified that marijuana was medically necessary for Mr. Ruelas's mother, Mr. Ruelas would have been hard-pressed to justify why she needed 1,800 grams of it.

Prosecution surprise or prejudice: The trial court found that the State was both surprised and prejudiced by Dr. Carter's proposed testimony. Mr. Ruelas never formally disclosed Dr. Carter as a witness until the second day of trial. The State had no reason to obtain its own medical expert for the trial. Had the trial court allowed Dr. Carter to testify, the State likely would have needed a substantial trial continuance, which risked the jury forgetting much of the testimony it heard in the State's case.

12

Culpability of violation: The trial court did not make a finding whether Mr. Ruelas's late disclosure was willful/bad faith. Our review of the record convinces us that Mr. Ruelas did not act willfully or in bad faith. Mr. Ruelas explained that it was difficult to obtain his mother's medical records, which Dr. Carter needed to review. Mr. Ruelas also expressed difficulty in communicating with Dr. Carter, who he described as very busy.

Nevertheless, the weight of the first three factors are such that we conclude the trial court did not abuse its discretion when it precluded Dr. Carter from testifying. Mr. Ruelas does not cite any authority that holds that a trial court abuses its discretion when it precludes an expert disclosed during trial from testifying. We presume there is no authority. *See Oregon Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 418, 36 P.3d 1065 (2001).

Affirmed.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Fearing, J.

13