[No. 27979. Department Two. July 10, 1940.]

SHELTON HOTEL COMPANY, INC., *Respondent,* v. JACK E. BATES, *as State Commissioner of Unemployment Compensation and Placement, Appellant.*[1]

[1]Reported in 104 P. (2d) 478.

*The Attorney General, Lyle L. Iversen, Assistant,* and *William J. Millard, Jr.,* for appellant.

*Neal, Brodie & Trullinger,* for respondent.

JEFFERS, J.—This action was instituted by the Shelton Hotel Company, Inc., against Jack E. Bates, commissioner of unemployment compensation and placement, under the declaratory judgment act (Rem. Rev. Stat. (Sup.), §§ 784-1 to 784-17 [P. C. §§ 8108-21 to 8108-37], Laws of 1935, chapter 113, p. 305, as amended by Laws of 1937, chapter 14, p. 39), to obtain a judg-

ment declaratory of its rights, status, and legal relations under the unemployment compensation act (Rem. Rev. Stat. (Sup.), §§ 9998-101 to 9998-124 [P. C. §§ 6233-301 to 6233-323], Laws of 1937, chapter 162, p. 574, as amended by Laws of 1939, chapter 214, p. 821); and particularly to obtain a judgment declaring the act last above mentioned to be not applicable to plaintiff for the calendar year of 1940, and for a further declaration that plaintiff is entitled to terminate coverage under the act.

The complaint alleges, in substance, that plaintiff is engaged in the hotel business in Shelton, Washington, and that, during the years 1937 and 1938, plaintiff had in its employ eight or more persons for twenty different weeks, and therefore became an employer under Laws of 1937, chapter 162, p. 609, § 19 (f), Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317]. The complaint further alleges that, during the year 1939, plaintiff regularly employed seven persons during each week, and there were no twenty weeks in which eight or more persons were in plaintiff's employment, and that also during each quarter of 1939, plaintiff's total payroll aggregated more than one hundred dollars; that pursuant to Laws of 1937, chapter 162, p. 590, § 8 (b), as amended by Laws of 1939, chapter 214, p. 831, § 6 (Rem. Rev. Stat. (Sup.), § 9998-108 [P. C. § 6233-311]), plaintiff, prior to January 15, 1940, made written application to the commissioner for termination of coverage for the year 1940, based upon the showing that during no twenty weeks of the previous calendar year, or 1939, did plaintiff have eight of more persons in employment; that the commissioner declined to terminate the coverage of plaintiff, for the reason that plaintiff had employed one or more persons during more than twenty weeks of the preceding calendar year, and had an aggregate payroll in excess of one

hundred dollars during each quarter of the preceding calendar year.

Defendant commissioner demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled by the trial court, whereupon defendant elected to stand on his demurrer, and on March 11, 1940, a judgment for plaintiff was entered, from which judgment we quote:

"It is hereby ordered, adjudged and decreed that the provisions of chapter 162, Laws of Washington, 1937, as amended by chapter 214, Laws of Washington, 1939, be and they are hereby adjudged as not applicable to the above plaintiff for the year 1940, and that the said plaintiff ceased to be subject to said act as of the first day of January, 1940.

"It is further ordered, adjudged and decreed that the defendant be and he is hereby directed to accept and grant the plaintiff's termination of coverage under the said unemployment compensation act and to cease from attempting to enforce any of the provisions of the said unemployment compensation law against plaintiff so long as the plaintiff does not have in his employ in any twenty different weeks of a calendar year, eight or more employees."

The commissioner has appealed from the judgment entered.

Appellant claims the court erred in overruling his demurrer; in failing to apply the statute respecting termination of coverage in accordance with its terms; in adjudicating that the act was not applicable to respondent for the year 1940; and in directing appellant to accept respondent's application for termination of coverage.

It is apparent that the question here presented is whether or not respondent was entitled, under the act, to a termination of coverage.

Respondent contends that it must have been the intent of the legislature to provide that termination of coverage could be effected whenever the number of employees in any twenty different weeks of the preceding calendar year became less than eight. In other words, the effect of respondent's contention would be to change § 8 (b), chapter 162, Laws of 1937, p. 590, as amended by § 6, chapter 214, Laws of 1939, p. 831, which now provides:

"Except as otherwise provided in sub-section (c) of this section, an employing unit shall cease to be an employer subject to this act only as of the 1st day of January of any calendar year, if it files with the commissioner prior to the 15th day of January of such year, a written application for termination of coverage, and he finds that there were no twenty different weeks within the preceding calendar year, within which such employing unit employed *one or more individuals in employment* subject to this act or that within said year total aggregate wages in excess of one hundred dollars did not become payable by such employing unit during any one calendar quarter," (Italics ours.)

so that where the section now reads "one or more," it would read "eight or more."

Section 8 (b), chapter 162, Laws of 1937, p. 590, which § 6, chapter 214, Laws of 1939, p. 831, amended, also contained the phrase *one or more,* in reference to termination of coverage.

Section 19 (f) (1), chapter 162, Laws of 1937, p. 609, defines "employer" as follows:

"Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment *eight or more individuals* (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week). . . . " (Italics ours.)

For a review of the legislative history of § 19, chapter 162, Laws of 1937, p. 609, see *Ernst v. Kootros,* 196 Wash. 138, 82 P. (2d) 126.

It will be noted, then, that by § 19 (f) (1), chapter 162, Laws of 1937, p. 609, an employer who had in employment eight or more individuals during the periods named in the section, came under the act, and by the provisions of § 8 (b), p. 590, continued to be under the act, if it appeared that there were no twenty different weeks within the preceding calendar year when the employer did not have in employment one or more individuals in employment subject to this act.

The legislature of 1939 attempted to amend § 19 (f), chapter 162, Laws of 1937, p. 609, by § 16, chapter 214, Laws of 1939, p. 855, to read as follows:

"Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment *one or more* individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week) and for whose employment by such employing unit during such year total wages of not less than one hundred dollars became payable during one calendar quarter," (Italics ours.)

but when chapter 214 came before the governor for his approval, the above section was vetoed.

Section 8 (b), chapter 162, Laws of 1937, p. 590, was amended by § 6, chapter 214, Laws of 1939, p. 831, but the provision *one or more,* contained in the 1937 act was not changed by the 1939 amendment, and the only change in this section was the addition of the following words:

". . . or that within said year total aggregate wages in excess of one hundred dollars did not become payable by such employing unit during any one calendar quarter."

It will again be noticed that, after the 1939 amendment and the veto of that part of § 16, chapter 214, p. 855, hereinbefore referred to, the act provided, as it did in 1937, compulsory coverage for employing units which in each of twenty different weeks within the preceding calendar year had in employment *eight or more* individuals, and provided for termination of coverage when there were no twenty different weeks within the preceding calendar year within which an employing unit employed *one or more* individuals, and did not have a quarterly payroll in excess of one hundred dollars.

Section 19 (f), chapter 162, Laws of 1937, p. 609, which is still in full force and effect because of the veto by the governor of portions of § 16, chapter 214, Laws of 1939, p. 855, further defines an employer as:

"Any employing unit which, having become an employer under paragraph (1), (2), (3), or (4), has not, under section 8, ceased to be an employer subject to this act."

It is appellant's contention that, under the plain wording of the statute, respondent, having had in its employment and subject to this act *one or more* individuals during twenty different weeks for the calendar year 1939, and having paid aggregate wages in excess of one hundred dollars during each quarter of such year, continues to be an employer and subject to the act for 1940, and not entitled to a termination of coverage for 1940, even though respondent may not have had eight persons in employment, subject to the act, for twenty different weeks during 1939.

We are of the opinion the facts as set up in the complaint present a situation which brings the case within the declaratory judgment act. *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345; *McDermott v. State,* 196 Wash. 261, 82 P. (2d)

568; *Heisey v. Port of Tacoma, ante* p. 76, 102 P. (2d) 258.

Respondent contends that, to properly determine the questions presented, the intent and purpose of the legislature in enacting the particular sections of the unemployment compensation act which are involved in this appeal, as well as the entire act, must be ascertained. Respondent further contends that this can be effected only by a study of the background of the law and the processes through which the act passed since its introduction in 1937, with particular attention given to § 19 (f) (1), p. 609, defining "employer," and § 8 (b), p. 590, providing for termination of coverage.

It is further contended by respondent that the failure to correct § 8 (b) of the 1937 act to correspond with § 19 (f) was due solely to carelessness and neglect. It is also contended that, if the act is to be interpreted literally as it now stands, one who has been required to comply with the act by reason of at one time having in his employ *eight or more,* is completely "frozen," in the law, and cannot thereafter terminate coverage until such time as he does not have in his employ *one or more;* while on the other hand, an employer of a maximum of six or seven employees, who has voluntarily chosen to comply with the act and receive its coverage, at any time after a two-year period of coverage may terminate the same by giving the commissioner thirty days written notice.

Respondent further argues that, in all but two of the states having an employment compensation act, the number of employees making coverage mandatory is the same as the number required for termination of coverage. It is also contended that § 8 (b) of the 1937 act, p. 590, as amended by § 6, chapter 214, Laws of 1939, p. 831, was enacted by the legislature for the sole purpose of controlling termination of coverage

under an act applying to all employers of *one or more,* and that it cannot be interpreted in harmony with the rest of the act, due to the veto by the governor of § 19 (f), chapter 162, Laws of 1937, p. 609, as amended by § 16, chapter 214, Laws of 1939, p. 855.

■ When referring to what the legislature intended, we must not forget that the governor, when acting upon bills passed by both houses of the legislature, is a part of the legislature, and acting in a legislative capacity, and we cannot therefore consider the intent of the house and the senate apart from the intent of the governor. We stated, in *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91:

"In the first place, and to clear away immaterial matters, it should be said that the governor's veto of parts of the measure now means nothing whatsoever. In exercising the veto power, the governor acts as a part of the legislative bodies, and the act is to be considered now just as it would have been if the vetoed provisions had never been written into the bill at any stage of the proceedings."

It is thus apparent that, when chapter 214, Laws of 1939, was enacted and passed by the legislative power, it did not amend § 19 (f), chapter 162, Laws of 1937, p. 609, which defined "employer" as one having in employment *eight or more individuals* for the prescribed period; neither did the 1939 amendment of § 8 (b) of the 1937 act, p. 590, change § 8 (b), in so far as the minimum number of employees to effect a termination of coverage is concerned. As we have heretofore stated, the effect of respondent's contention is that § 6, chapter 214, Laws of 1939, p. 831, should be considered as reading *eight or more,* instead of *one or more,* to correspond with § 19 (f) (1), p. 609.

■ While we agree that it is our duty, in construing a statute, to ascertain, if possible, the legislative intent, we are of the opinion, after a consideration of

the 1937 and 1939 acts, that we would not be justified in construing § 6, chapter 214, Laws of 1939, p. 831, as contended for by respondent. The rule is universal that, when the language of a statute is plain and free from ambiguity, it must be held to mean exactly what it says. In such a situation, there is neither room nor occasion for the application of any rules of construction. *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994; *State ex rel. Blankenship v. Gaines,* 136 Wash. 610, 241 Pac. 12; *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433; *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050; *Spokane v. State,* 198 Wash. 682, 89 P. (2d) 826; 2 Lewis' Sutherland Statutory Construction (2d ed.), 701, § 366. In *Seattle Ass'n of Credit Men v. General Motors Acceptance Corp.,* 188 Wash. 635, 63 P. (2d) 359, we stated:

"There are two well established rules by which we must be governed in construing a statute. On the one hand, we must give effect to each and every part of it; on the other, we are not permitted to read into a statute anything which we may conceive the legislature may have unintentionally left out."

See, also, *Maryland Casualty Co. v. Tacoma,* 199 Wash. 384, 92 P. (2d) 203; Black on Interpretation of Laws (2d ed.), 45.

"The process of interpreting and applying a statute must begin with the assumption that the purpose and meaning of the legislature are correctly and definitely expressed by the language employed in the act; and the intention of the law-making body is first of all to be sought in the words of the statute, taking them in their natural and ordinary sense—words of common use in their commonly accepted signification and technical terms in their proper technical sense—and if, as thus read, they convey a clear and definite meaning, there is neither necessity nor justification for resorting to any extraneous considerations now for supposing

that the legislature may have intended something different from what it has thus expressed.

" ' . . . It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning . . . Courts cannot correct supposed errors, omissions, or defects in legislation, or vary, by construction, the contracts of parties. . . .'

"Even if the court is fully persuaded that the legislature really meant and intended something entirely different from what it actually enacted, and that the failure to convey the real meaning was due to inadvertence or mistake in the use of language, yet, if the words chosen by the legislature are not obscure or ambiguous, but convey a precise and sensible meaning (excluding the case of obvious clerical errors or elliptical forms of expression), then the court must take the law as it finds it, and give it its literal interpretation, without being influenced by the probable legislative meaning lying back of the words." Black on Interpretation of Laws (2d ed.), 48, 49, 53.

■ Respondent discusses at considerable length the legislative history of the enactment of the 1937 act and the amendments thereto enacted by the 1939 session of the legislature. Legislative history of laws may properly be considered as an aid to ascertaining the legislative intent only when the statute is ambiguous, or its meaning doubtful and obscure. *United States v. Missouri Pac. R. Co.*, 278 U. S. 269, 73 L. Ed. 322, 49 S. Ct. 133. In *Lewellyn v. Harbison*, 31 F. (2d) 740, the court stated:

"The language involved is clear, precise, and unambiguous, and in our opinion resort to the legislative history of the act is unnecessary, in order to determine its meaning."

*State ex rel. Dunbar v. State Board*, 140 Wash. 433, 249 Pac. 996, states the rule in the following language:

"Finding an enrolled bill in the office of the secretary of state, unless that bill carries its death warrant in its hand, the courts will make no investigation of the antecedent history connected with its passage, except as such an investigation may be necessary in case of ambiguity in the bill for the purpose of determining the legislative intent."

See, also, the discussion on this question in 70 A. L. R. 5 *et seq.*, under the title "Resort to constitutional or legislative debates, committee reports, journals, etc., as aid in construction of constitution or statute."

We desire again to call attention to the case of *Ernst v. Kootros*, 196 Wash. 138, 82 P. (2d) 126, which deals with § 19 (e) of the 1937 act, and in which case a discussion of the legislative history of the 1937 act will be found.

We are convinced that the language used in the act under consideration is plain and unambiguous, and that, when the legislature provided for termination of coverage in § 8 (b) of the 1937 act, as amended by § 6 of the 1939 act, upon a showing of employment of less than "one or more" for the period prescribed, it must be held to have meant what it said. If this court were to speculate as to what the legislature intended, had it foreseen the veto of the amended § 19 (f) (1), is it not just as logical to say that that body intended a coverage provision of "eight or more" and a termination of coverage provision of "one or more" as it had in fact provided for in the 1937 act, as it is to say, as respondent contends, that the legislature must have intended to provide a coverage provision of "eight or more" and also a termination of coverage provision of "eight or more?" Under the authorities cited, courts may not engage in such conjecture.

We are unable to agree with respondent that the coordinate wage test contained in § 19 (f) (1) of the

1937 act, as amended by § 16, chapter 214, Laws of 1939, and vetoed, and in § 8 (b) of the 1937 act, as amended by § 6, chapter 214, Laws of 1939, necessarily supports its contention that the legislature intended the number of employees in each section to be the same. However, there is nothing obscure, uncertain, or ambiguous in § 8 (b), as amended, and it does not follow therefore that, because the wage provision in § 19 (f) (1), as amended, was vetoed, the wage provision in § 8 (b), as amended, must also fall.

■ Respondent finally contends that a literal interpretation of the sections considered would render the act unconstitutional, as violative of Art. I, § 12, of the state constitution, and the equal protection clause of the fourteenth amendment to the Federal constitution. It is respondent's contention that § 8 (b), chapter 162, Laws of 1937, p. 590, as amended by § 6, chapter 214, Laws of 1939, p. 831, creates an unreasonable distinction between employers in the same class. The position of respondent is that, whereas an employer who employs eight or more for the prescribed period for the preceding calendar year continues under the act as long as he employs one or more for the prescribed period, an employer who employs any number less than eight, while not compelled to come under the act, may voluntarily do so, and when he does he may terminate coverage at any time after the two-year period by giving the required notice.

While the case of *Carmichael v. Southern Coal & Coke Co.*, 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A. L. R. 1327, does not answer the precise question here raised, we think it very persuasive that the act involved in the instant case does not violate the constitutional provisions referred to by respondent.

There are many cases from this jurisdiction dealing with the question of the reasonableness of classifica-

tion. We refer only to *State v. Jones,* 137 Wash. 556, 243 Pac. 1; *State ex rel. Scott v. Superior Court,* 173 Wash. 547, 24 P. (2d) 87; *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101; *State ex rel. Northern Pac. R. Co. v. Henneford,* 3 Wn. (2d) 48, 99 P. (2d) 616; and *State v. Sears, ante* p. 200, 103 P. (2d) 337.

Applying the rules laid down in the cited cases, we are of the opinion the classification here involved cannot be said to be so unreasonable as to justify us in holding the act unconstitutional. The act creates a class of employers who have, for a prescribed period, employed eight or more individuals. The treatment given to this class is absolutely the same. Employers automatically come within this group when they employ eight or more for a certain period, and all members of this group cease to be covered by the act when they meet the requirements of § 8 (b), chapter 162, Laws of 1937, p. 590, as amended by § 6, chapter 214, Laws of 1939, p. 831.

We are therefore of the opinion that § 8 (b), chapter 162, Laws of 1937, as amended by § 6, chapter 214, Laws of 1939, must be held to mean what it says, and as so interpreted does not offend against the constitution.

The judgment of the trial court is reversed, with instructions to sustain appellant's demurrer to respondent's complaint.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.