IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31280-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL K. ELLIS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J.—Daniel K. Ellis appeals his conviction for second degree unlawful firearm possession, contending the trial court erred in denying his suppression motion. He contends the search warrant lacked probable cause to believe his marijuana growing operation was criminal, considering tensions between the Uniform Controlled Substances Act (CSA), chapter 69.50 RCW, and the Washington State Medical Use of Cannabis Act (MUCA), chapter 69.51A RCW. We disagree with him and affirm.

FACTS

The facts are undisputed. In March 2012, Spokane County Sheriff's Deputy Mark Benner visited Mr. Ellis's residence to arrest a third party on local warrants. He smelled a marijuana odor with increasing potency as he approached the house. Because two unfriendly dogs prevented him from accessing the front door, he began

looking for another way to contact the residents. Near the garage, he again smelled a marijuana odor and saw a very bright light emitting from the edges of windows mostly covered by black plastic. Peering inside, he saw walling and insulation encompassing about a quarter of the interior space. Based on his training and experience, he believed Mr. Ellis was growing marijuana at his residence.

Deputy Benner submitted an affidavit and obtained a warrant to search the residence for evidence of marijuana manufacturing in violation of the CSA. While executing the search warrant, law enforcement found one active and two inactive marijuana growing rooms, two valid MUCA growing permits, and a loaded shotgun. Mr. Ellis is a convicted felon.

The State charged Mr. Ellis with second degree unlawful firearm possession. He moved to suppress the shotgun under the exclusionary rule, arguing the search warrant lacked probable cause to believe his marijuana growing operation was criminal. The trial court denied the motion in written factual findings and legal conclusions stating:

1. Courts have been struggling with the medical marijuana issues for over a decade.
2. The state legislature has attempted to fix those issues over time.
3. There is no realistic way for law enforcement to determine if someone is a medical marijuana user.
4. An authorized medical marijuana user must still comply with state law.
5. Law enforcement did not know if the defendant was in compliance with the medical marijuana statute.

. . . .

1. Under the medical marijuana laws, there are limits.
2. It is still a violation of the law to have excess marijuana.
3. HIPAA[1] privacy laws prevent asking doctors about medical marijuana patients.

---

[1] Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified in titles 18, 26, 29, and 42 U.S.C.).

4. That invasion has to be justified by either a warrant or exigent circumstances.
5. Law enforcement has the authority to determine a defendant's compliance with state statutes regarding medical marijuana.
6. Based on the state of the law, as it currently exists, the search warrant was valid.
7. Law enforcement was lawfully allowed to search the home and gather evidence.

Clerk's Papers at 35-36. The court found Mr. Ellis guilty following a stipulated facts trial. He appealed.

## ANALYSIS

The issue is whether the trial court erred in denying Mr. Ellis's suppression motion. He challenges the court's legal conclusion that probable cause supported the search warrant. Specifically, he argues while the affidavit may have presented probable cause to believe he was growing marijuana, it did not, considering the activities decriminalized by MUCA, present probable cause to believe he was violating the CSA in doing so. We review legal conclusions regarding evidence suppression de novo.[2] *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). And, we review de novo whether qualifying sworn information as a whole

---

[2] The factual findings regarding evidence suppression are verities on appeal because Mr. Ellis does not challenge them. *See State v. Christian*, 95 Wn.2d 655, 656, 628 P.2d 806 (1981); RAP 10.3(g). But we still consider them in determining whether they support the legal conclusions. *See State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

presents probable cause supporting a search warrant.[3] *In re Det. of Peterson*, 145 Wn.2d 789, 800, 42 P.3d 952 (2002).

A judicial officer may not issue a search warrant unless he or she determines probable cause supports it. U.S. CONST. amend. IV; CONST. art. I, § 7; CrR 2.3(c). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (citing *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995)); *see State v. Patterson*, 83 Wn.2d 49, 58, 515 P.2d 496 (1973). "Accordingly, 'probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). While the affidavit need not make a prima facie showing of criminal activity, it must show criminal activity is at least probable. *See State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

The CSA generally criminalizes growing marijuana: "Except as authorized by this chapter, it is unlawful for any person to manufacture . . . a controlled substance,"

---

[3] Further, we interpret a statute de novo. *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990). When doing so, we "discern and implement" our legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *see State ex rel. Great N. Ry. v. R.R. Comm'n of Wash.*, 52 Wash. 33, 36, 100 P. 184 (1909). If the statute's meaning is plain, we effectuate it as an expression of our legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *Walker v. City of Spokane*, 62 Wash. 312, 318, 113 P. 775 (1911).

4

including marijuana.[4] RCW 69.50.401(1); *see* RCW 69.50.401(2)(c), .204(c)(22). But

MUCA decriminalizes growing marijuana if a person meets certain requirements:

> The medical use of cannabis in accordance with the terms and conditions
> of this chapter does not constitute a crime and a qualifying patient or
> designated provider in compliance with the terms and conditions of this
> chapter may not be arrested, prosecuted, or subject to other criminal
> sanctions . . . for . . . manufacture . . . of . . . cannabis under state law . . . .

RCW 69.51A.040. Still, this provision's reach is narrow: "Nothing in this chapter shall

be construed to supersede Washington state law prohibiting the . . . manufacture . . . of

cannabis for nonmedical purposes." RCW 69.51A.020.

Interpreting these statutes together, we conclude MUCA created a potential

medical use exception to the CSA's general rule criminalizing marijuana manufacturing.

At least for purposes of probable cause, this new exception functions about the same as

the old medical use affirmative defense provided in former RCW 69.51A.040(1) (1999).

*See generally* Vitaliy Mkrtchyan, Note, *Initiative 692, Now and Then: The Past, Present,

and Future of Medical Marijuana in Washington State*, 47 GONZ. L. REV. 839, 863-64

(2012) (discussing the medical use exception's possible limitations). In *State v. Fry*,

168 Wn.2d 1, 228 P.3d 1 (2010), a plurality of our Supreme Court held the medical use

affirmative defense did not vitiate probable cause supporting a search warrant. The

lead opinion affirmed this division's analysis on this issue while the concurring opinion

expressed no view on this issue. *Id.* at 10 (J.M. Johnson, J., lead opinion), *aff'g State v.*

*Fry*, 142 Wn. App. 456, 460-61, 174 P.3d 1258 (2008); *id.* at 20 (Chambers, J.,

---

[4] Because law enforcement obtained and executed the warrant in March 2012,
we do not consider the November 2012 amendments made by Initiative 502, Laws of
2013, ch. 3 (codified in chapters 46.04, 46.20, 46.61, and 69.50 RCW).

concurring). Because MUCA did not per se legalize marijuana or alter the established elements of a CSA violation, the thrust of *Fry* survived Laws of 2011, ch. 181, § 401 (codified at RCW 69.51A.040).

Our conclusion is consistent with legislative history. While our legislature initially sought to prohibit searches for evidence of marijuana-based crimes unless supported by probable cause of some MUCA noncompliance, those provisions were eventually removed or vetoed. *Compare* S.B. 5073, §§ 401, 901, 904, 62d Leg., Reg. Sess. (Wash. 2011), *and* ENGROSSED SECOND SUBSTITUTE S.B. 5073, §§ 401, 901-902, 62d Leg., Reg. Sess. (Wash. 2011), *with* LAWS OF 2011, ch. 181, §§ 401, 901, *and* Veto Message on Engrossed Second Substitute S.B. 5073, from Governor Christine Gregoire to the President and Members of the Senate (Apr. 29, 2011), *reprinted in* LAWS OF 2011, at 1374-76. Consequently, the MUCA exception applies to marijuana-based arrests, prosecutions, and criminal sanctions, but not searches. *See* RCW 69.51A.040; S.B. REP. on Engrossed Second Substitute S.B. 5073 as Amended by the House on Apr. 11, 2011, at 7, 62d Leg., Reg. Sess. (Wash. 2011); Veto Message on Engrossed Second Substitute S.B. 5073, *supra*.

Considering all, we hold an affidavit supporting a search warrant presents probable cause to believe a suspect committed a CSA violation where, as here, it sets forth enough details to reasonably infer the suspect is growing marijuana on his or her property. The affidavit need not also show the MUCA exception's inapplicability. In so holding, we respectfully disagree with *United States v. Kynaston*, No. CR-12-0016-WFN, slip op. at 2 (E.D. Wash. May 31, 2012) (granting a suppression motion and

6

No. 31280-1-III
*State v. Ellis*

concluding that under Washington law, an affidavit supporting a search warrant for evidence of a marijuana-based crime "must show probable cause that the criteria of the medical marijuana exception have not been met"), *rev'd*, No. 12-30208 (9th Cir. July 24, 2013). Here, the trial court did not err in denying Mr. Ellis's suppression motion.

Affirmed.

_____
Brown, J.

I CONCUR:

_____
Siddoway, A.C.J.

7

No. 31280-1-III

FEARING, J. (concurring) — I agree with the dissenting opinion in *State v. Fry*, 168 Wn.2d 1, 20, 228 P.3d 1 (2010)(Sanders, J., dissenting). One's growing of marijuana should not support probable cause to search one's property when one possesses authorization to grow the plant for medicinal purposes.

RCW 69.51A.040 now reads, "The medical use of cannabis . . . does not constitute a crime and a qualifying patient or designated provider in compliance with the terms and conditions of this chapter may not be arrested, prosecuted, or subject to other criminal sanctions . . . ." Nor may the medicinal user or provider have his or her "real or personal property seized or forfeited[,]" provided the user or provider complies with all other provisions of the medical marijuana law. RCW 69.51A.040. Here, when Deputy Mark Benner approached Daniel Ellis' home, Ellis was absent and could not present Deputy Benner authorization papers. But the deputy, before seeking a warrant, could have investigated the legality of Ellis' growing marijuana. Benner could have returned to the home later and asked Ellis to show his authorization to grow.

In 1998, the voters of Washington approved Initiative 692, the Washington State Medical Use of Marijuana Act (MUMA), chapter 69.51A RCW. The people found that "humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual

decision, based upon their physician's professional medical judgment and discretion."

MUMA, LAWS OF 1999, ch. 2, §§ 1-2 (now codified as amended at RCW 69.51A.005).

For patients to smoke marijuana, someone must grow the plant.

Washington medicinal marijuana law reflects the unamerican principle that the innocent user or grower carries the burden of establishing his or her guiltlessness. In *Fry*, a plurality of the court recognized that authorization to grow marijuana is "[a]n affirmative defense [that] admits the defendant committed a criminal act but pleads an excuse for doing so." 168 Wn.2d at 7 (J.M. Johnson, J., lead opinion). The accused may present authorization as a defense only after being "charged with a violation." *Id.* at 9. Because authorization to grow medicinal marijuana does not negate probable cause, law enforcement may treat a medical marijuana grower or user as a criminal suspect through searches of his or her property, despite the grower or user not being guilty of a crime. *Id.* at 6. Thus, under the current state of the law, law enforcement could search a medicinal grower's property every day and impose upon the grower the burden of proving his or her innocence to avoid arrest, prosecution, or other criminal sanctions. Humanitarian compassion takes a back seat.

MUMA has not changed to the benefit of Daniel Ellis since the *Fry* decision. In 2011, the State legislature adopted a comprehensive amendment to the law that, among other things, provided for licensing of marijuana producers with the Department of Agriculture and required a law enforcement officer to ascertain whether the person or

2

location under investigation was registered with the Department before obtaining a search warrant. S.B. 5073, § 902(1), 62d Leg., Reg. Sess. (Wash. 2011). But Governor Christine Gregoire vetoed section 902 of the bill, based upon a justifiable concern that state employees might be prosecuted under federal law for aiding in the production of a controlled substance. Veto Message on Engrossed Second Substitute S.B. 5073, from Governor Gregoire to the President and Members of the Senate (Apr. 29, 2011), *reprinted in* LAWS OF 2011, at 1374-76. Washington Initiative 502, LAWS OF 2013, ch. 3 (codified in chapters 46.04, 46.20, 46.61, and 69.50 RCW), may temper, but it will not erase the discordant provisions of the State's medical marijuana law. MUMA will continue to exist aside the limited legalization of marijuana, because MUMA's provisions target exclusively medicinal, not recreational, users. *See* Vitaliy Mkrtchyan, Note, *Initiative 692, Now and Then: The Past, Present, and Future of Medical Marijuana in Washington State*, 47 GONZ. L. REV. 839, 873 (2012).

As a member of the Court of Appeals, I defer to the decisions of the state Supreme Court. Although I disagree with the lead opinion in *Fry*, it provides the answer to the question of whether the warrant to search Daniel Ellis' home was based upon probable

No. 31280-1-III
*State v. Ellis*

cause and answers the question in the affirmative. Therefore, I must concur in our

majority's affirmation of Daniel Ellis' conviction for an unrelated crime.

_____

Fearing, J.

I CONCUR:

_____

Siddoway, A.C.J.

4