# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53376-6-II |
| Respondent, | |
| v. | |
| JEFFREY J. PALMER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Jeffrey J. Palmer appeals the trial court's judgment and sentence. Palmer argues that 1) the trial court erred by failing to instruct the jury that the government must prove a knowledge element beyond a reasonable doubt in order to establish possession of a controlled substance, 2) there is insufficient evidence to sustain Palmer's conviction for being a prisoner or inmate in possession of marijuana, and 3) the provision that legal financial obligations (LFOs) shall bear interest until paid in full violates RCW 10.82.090. Palmer also submits a statement of additional grounds (SAG), arguing that the trial court erred by denying Palmer's request to add the ride-along person to his witness list and the arresting officer's remarks were improper.

We decline to review Palmer's challenge to the knowledge element for the possession of a controlled substance conviction. We hold that there is insufficient evidence to sustain Palmer's conviction for being a prisoner or inmate in possession of marijuana, and the arguments in Palmer's SAG fail. Accordingly, we affirm Palmer's conviction for possession of a controlled substance, reverse the conviction for possession of marijuana by a prisoner or inmate, and remand to the trial

court to dismiss the charge of possession of marijuana by a prisoner or inmate with prejudice and to resentence Palmer.[1]

FACTS

A.     BACKGROUND

Jeffrey Palmer was arrested after allegedly trespassing on a hospital's property. During the search incident to arrest, the arresting officer, Deputy Alan Earhart, found a container of methamphetamine and drug paraphernalia on Palmer's person. Deputy Earhart transported Palmer to the Clark County jail. While Deputy Earhart was filling out the booking forms for Palmer, Palmer stated that he needed to use the restroom. Without finishing the forms, Deputy Earhart took Palmer inside the jail to use the restroom. While Palmer was using the restroom, Deputy Earhart and Deputy Luke Hatcher, a correctional deputy, suspected that Palmer was trying to hide something. Deputy Hatcher conducted a strip search and found a small black canister containing marijuana, and a blue glove containing two "baggies" of marijuana. 2 Verified Report of Proceedings (VRP) (May 20, 2019) at 185.

After the strip search, Deputy Earhart was not able to book Palmer into the jail but had to take Palmer back to the hospital because Palmer made statements about allegedly swallowing foreign objects. After confirming Palmer's statements that he had swallowed foreign objects were false, Deputy Earhart took Palmer back to the Clark County jail for booking.

---

[1] Because we are remanding to the trial court to resentence Palmer, we do not reach the issue of improperly imposed LFOs. On remand, the trial court should consider the imposition of LFOs under the current LFO statutes and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

Tthe State charged Palmer with possession of a controlled substance by prisoners or jail inmate, possession of a controlled substance—methamphetamine, criminal trespass in the second degree, and obstructing a law enforcement officer.

B.    JURY TRIAL

1.    Defense Request on Day of Trial

Before jury selection, Palmer stated to the trial court that a "ride-along," who was a civilian who spoke limited English, was in the patrol car with Deputy Earhart. 1 VRP (May 20, 2019) at 11. Palmer stated that the parties had agreed that an interview with Earhart would occur before Earhart testified. Palmer asked that he be allowed to add the ride-along person to his witness list, if he wished to do so after speaking to Earhart. The court replied,

> Well, the concern is we count on a case being ready for trial and that all discovery, you know, has been developed. So if there's knowledge of some name or identity of this person who may have been along, then, I mean, you can ask for that, but it's—we're here on the day of trial, so we really need to move forward.

1 VRP (May 20, 2019) at 11.

2.    Trial Testimony

a.    McDonald's testimony

Kenneth Scott MacDonald, a safety and security officer at the hospital, testified that he came into contact with Palmer on April 5, 2019. MacDonald stated that his dispatch advised him that an emergency department nurse had requested assistance with a patient who was vacating his room. MacDonald met Palmer as Palmer was walking away from the room he had occupied.

Palmer stated that he wanted to use the restroom. MacDonald showed him the first available bathroom. Palmer "hemmed and hawed" and then decided he did not want to use the

bathroom but wanted to call a cab. 2 VRP (May 20, 2019) at 159. MacDonald walked Palmer to the courtesy phone in the lobby and advised him that there were cab company numbers on the wall that he could use. Palmer again "hemmed and hawed" and decided he did not want to call a cab and wanted to use the bathroom again, but he did not use the bathroom. 2 VRP (May 20, 2019) at 159. Instead, Palmer "hemmed and hawed and delayed and fidgeted," and then said he wanted to catch the bus. 2 VRP (May 20, 2019) at 160. MacDonald told Palmer that he would help him find a bus stop, but Palmer continued to "hem and haw." 2 VRP (May 20, 2019) at 160. MacDonald told Palmer that he needed to exit the building.

MacDonald escorted Palmer outside and said, "It's time to leave. You have no more business here." 2 VRP (May 20, 2019) at 161. Palmer walked partway into the parking lot and then came back saying he did not want to take the bus. MacDonald told Palmer that he needed to leave or he would be placed under arrest for trespass. Palmer did not leave. MacDonald then told Palmer that he was under arrest and put him in handcuffs. A deputy from the Clark County Sheriff's Office arrived.

### b.    Earhart's testimony

Alan Earhart, a deputy sheriff with the Clark County Sheriff's Office, testified that he was dispatched to the hospital on April 5. Deputy Earhart had his daughter's fiancé with him at the time as a ride-along.[2] When Earhart arrived at the hospital, he spoke with MacDonald and placed Palmer under arrest. The ride-along person did not help out in any way or speak with Palmer.

---

[2]  A ride-along is a civilian who sits in the police vehicle.

When Earhart searched Palmer incident to the arrest, Earhart found a glass pipe, a black plastic container from a marijuana dispensary, and some aluminum foil that had burn marks on it. Deputy Earhart then transported Palmer to the Clark County jail parking lot. In the parking lot, Earhart filled out a form called a "Prebook," which is needed to book someone into the Clark County jail, and a probable cause statement. 2 VRP (May 20, 2019) at 182. To complete the booking process, Earhart needed to walk Palmer into a "sally port" and wait in line for booking. 2 VRP (May 20, 2019) at 182. While Earhart was trying to fill out the forms, Palmer stated that he urgently needed to use the restroom. Earhart asked him if he could wait for 15 minutes, and Palmer stated that he could not. In order to accommodate Palmer's need to urinate, Earhart did not finish his forms but walked Palmer inside the jail.

Deputy Earhart and a corrections deputy took Palmer to the bathroom. They had a visual of Palmer the entire time. Earhart observed that "[Palmer] stood in front of the toilet; he moved around a lot. He appeared to be positioning things at his—I'll just say his groin or crotch area, moved around a lot. His pants were unzipped at one point, and he urinated very, very little." 2 VRP (May 20, 2019) at 184. The officers stopped Palmer because he appeared to be intent on doing something other than urinating. Earhart told Palmer that it was a felony crime for an inmate to smuggle contraband into the jail. The corrections deputy decided that based on the finding of the drug paraphernalia and Palmer's actions in the bathroom, a strip search was necessary. The corrections deputy conducted the strip search and handed Earhart a small black canister containing marijuana, and a blue glove containing two "baggies" of marijuana. 2 VRP (May 20, 2019) at

185. After these items were discovered, Earhart looked at the items he had found on Palmer at the hospital. The canister that Earhart had found during the initial search contained crystal meth.[3]

After the strip search, Deputy Earhart could not book Palmer into the jail until Palmer got a medical clearance because Palmer told him that he had eaten a razor blade. Despite not seeing Palmer with a razor blade during the two hours that Earhart had been with Palmer, Earhart took Palmer back to the hospital. A hospital x-ray showed no razor blade present.

When they got back into the patrol car, Palmer showed Deputy Earhart some white wire. The end of the wire was missing, and Palmer stated that he swallowed it. Earhart found the end of the wire tucked between Palmer's body and the waistband of his pants. Then Palmer claimed that there were two wires and that he had swallowed the other one. Earhart called the hospital staff and asked them that if there were other pieces of wire missing, and the hospital staff answered in the negative. Earhart took Palmer back to the Clark County jail for booking.

      c.      Hatcher's testimony

Luke Hatcher, a corrections deputy at the jail, testified that he met Palmer on April 5. Normally, after an inmate is brought to the jail by the arresting officer, a corrections deputy pats the inmate down and searches their person to make sure there are no weapons or contraband on them. Then they dress the inmate in jail clothes. Deputy Hatcher testified that Deputy Earhart "asked us to kind of expedite him into booking because he—he said that the inmate he was bringing in had to urinate really bad." 2 VRP (May 20, 2019) at 216.

---

[3] The Washington State Patrol Crime Lab tested the substance and confirmed that it was methamphetamine.

Hatcher patted Palmer down, removed Palmer's outside clothing layers, then took Palmer to the bathroom and stood right behind him. Palmer was squirming around a lot and was trying to reach into his pants and adjust something. Hatcher had to keep reminding Palmer to not reach into his pants. Palmer eventually urinated a little bit. Hatcher was suspicious that Palmer was hiding something because Deputy Earhart had said that he had found a glass pipe on Palmer.

Hatcher brought Palmer back to booking and asked him if he had anything that he needed to hand over. Palmer did not hand anything over. Hatcher took Palmer to the dressing room and performed a strip search. Hatcher found a black container in Palmer's pants and a latex glove in his underwear. There was marijuana in the glove. Hatcher handed the items to Earhart, and Earhart again took custody of Palmer.

        d.      Palmer's testimony

Palmer testified that he arrived at the hospital on April 5 via ambulance because he had a "sickle cell crisis" and needed blood transfusions. 2 VRP (May 20, 2019) at 250. That same day, Palmer left his hospital room because he wanted to contact his family. Palmer could not immediately leave the hospital because he was not from the area and did not know where he was. Later, Deputy Earhart arrived, searched Palmer, took items out of his pockets, and placed the items in a bag.

When Deputy Earhart took Palmer to the jail parking lot, Palmer said that he needed to use the bathroom. But Earhart said Palmer had to wait until he was done with his paperwork. Earhart took Palmer inside the jail when Palmer stated that he would urinate on himself. Inside the jail, Palmer was subjected to a pat-down and was asked to remove his clothing to a single layer. An officer walked him to the bathroom and watched him use the restroom. Palmer went a little bit but

7

did not feel comfortable. The officer then said he would conduct a strip search. Palmer stated,

"Well, I have a lot of weed on me so Imma just give it to you because it doesn't make any sense

lying about having it." 2 VRP (May 20, 2019) at 262.

Palmer did not believe that he was in possession of methamphetamine. He was shocked to

learn that Deputy Earhart had found methamphetamine on him because he does not use the drug.

### 3. Jury Instructions

Palmer's proposed to-convict jury instruction stated, in relevant part:

> To convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about April 5, 2019, the defendant possessed a controlled substance (methamphetamine); and
> (2) That this act occurred in the State of Washington.
>
> . . . .
>
> A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in his possession or did not know the nature of the substance.
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

Clerk's Papers (CP) at 19, 22. During the jury instruction conference, Palmer replied, "No

objection" to the instruction that it is a crime for any person to possess a controlled substance

except as authorized by law. 3 VRP (May 21, 2019) at 310.

The trial court's instructions read to the jury stated, in relevant part:

[Jury] Instruction No. 8

8

A person commits the crime of Possession of a Controlled Substance by Prisoner or Jail Inmate when he is confined in a county or local correctional institution and, without legal authorization, while in the institution or while being conveyed to or from the institution, or while under the custody or supervision of institution officials, officers, or employees, or while on any premises subject to the control of the institution, knowingly possesses or has under his or her control any narcotic drug or controlled substance, alcohol, marijuana, or other intoxicant.

. . . .

[Jury] Instruction No. 12

To convict the Defendant of the crime of Possession of a Controlled Substance by Prisoner or Jail Inmate each of the following four elements of the crime must be proved beyond a reasonable doubt:
  (1) That on or about April 5, 2019, the Defendant was confined in a county or local correctional institution;
  (2) That while in the institution or while being conveyed to or from the institution, or while under the custody or supervision of institution officials, officers, or employees, or while on any premises subject to the control of the institution, the Defendant possessed or had under his control any narcotic drug or controlled substance, alcohol, marijuana, or other intoxicant;
  (3) That the Defendant knowingly possessed or had under his control any narcotic drug or controlled substance, alcohol, marijuana, or other intoxicant; and
  (4) That any of these acts occurred in the State of Washington.

. . . .

[Jury] Instruction No. 13

It is a crime for any person to possess a controlled substance except as authorized by law.

Jury Instruction No. 14

A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in his possession or did not know the nature of the substance.

The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means

that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

. . . .

[Jury] Instruction No. 16

To convict the Defendant of the crime of Possession of a Controlled Substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
  (1) That on or about April 5, 2019, the Defendant possessed a controlled substance, Methamphetamine; and
  (2) That this act occurred in the State of Washington.

CP at 42, 47-49, 51.

C.    VERDICT AND SENTENCING

The jury found Palmer guilty of possession of a controlled substance by prisoner or jail inmate, possession of a controlled substance—methamphetamine, and obstructing a law enforcement officer. The jury found Palmer not guilty of criminal trespass in the second degree.

The trial court sentenced Palmer to 21 months of confinement and imposed a $500 crime victim assessment fee. The judgment and sentence stated, "The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090." CP at 73.

Palmer appeals.

ANALYSIS

A.    KNOWLEDGE/MENS REA

Palmer argues that "[t]he jury was not instructed that the government must prove knowledge beyond a reasonable doubt to establish possession of a controlled substance. Instead, they were instructed [that] Mr. Palmer had the burden of proving his possession was unwitting."

10

Br. of Appellant at 12-13 (citation omitted). Palmer contends that "[t]his court should hold that proof of possession of a controlled substance requires the government to prove Mr. Palmer knew he was in possession of a controlled substance." Br. of Appellant at 13. Palmer also contends that "[t]he government failed to establish Mr. Palmer knew he was in possession of methamphetamine, as required by RCW 69.50.4013(1)." Br. of Appellant at 12 (boldface omitted).

The invited error doctrine prohibits a party from setting up an error at trial and then complaining of the error on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). "Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant proposed an instruction or agreed to its wording." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Here, Palmer's proposed jury instructions did not include a proof of knowledge element for the crime of possession of a controlled substance. Palmer also proposed the unwitting possession affirmative defense instruction, which he now claims unconstitutionally shifted the burden of proof. Further, when the trial court conferenced the jury instructions, Palmer replied, "No objection" to the instruction that it is a crime for any person to possess a controlled substance except as authorized by law. 3 VRP (May 21, 2019) at 310.

Palmer did not simply fail to object to the omission of a knowledge element, he proposed the instruction for possession of a controlled substance without a knowledge element and agreed on the record to the instruction the trial court gave to the jury, which did not include a knowledge element. Thus, any alleged error by the trial court in omitting a knowledge element in the jury instructions was invited. Therefore, we do not review the issue.

B.      RCW 9.94.041(2)

Palmer argues that "[t]he government failed to establish Mr. Palmer was confined in a county or local correctional institution when marijuana was found on him, as required by RCW 9.94.041(2)." Br. of Appellant at 30 (boldface omitted). Palmer contends that "[a]t no time prior to the discovery of marijuana on his body was Mr. Palmer booked into the county jail or otherwise transferred into the custody of the institution." Br. of App. at 35-36. The State concedes that there is insufficient evidence to sustain Palmer's conviction for being a prisoner or jail inmate in possession of marijuana. We accept the State's concession.

1.      Legal Principles

We review questions of statutory interpretation de novo. *State v. Bao Dinh Dang*, 178 Wn.2d 868, 874, 312 P.3d 30 (2013). "The purpose of statutory interpretation is to determine and carry out the intent of the legislature." *State v. Sweat*, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014) (citing *State v. Alvarado*, 164 Wn.2d 556, 561-62, 192 P.3d 345 (2008)). "'Statutory interpretation begins with the statute's plain meaning.'" *State v. Derenoff*, 182 Wn. App. 458, 463, 332 P.3d 1001 (2014) (quoting *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)). We evaluate the plain meaning of the statute "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009) (citing *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005)).

RCW 9.94.041 (Narcotic drugs, controlled substances, alcohol, marijuana, other intoxicant, cell phone, or other form of electronic telecommunications device—Possession, etc., by prisoners—Penalty) states:

(2) Every person confined in a county or local correctional institution who, without legal authorization, while in the institution or while being conveyed to or from the institution, or while under the custody or supervision of institution officials, officers, or employees, or while on any premises subject to the control of the institution, knowingly possesses or has under his or her control any narcotic drug or controlled substance, as defined in chapter 69.50 RCW, alcohol, marijuana, or other intoxicant, or a cell phone or other form of an electronic telecommunications device, is guilty of a class C felony.

The plain language of the statute shows that RCW 9.94.041(2) pertains to those who are "confined" in a county or local correctional institution. RCW 9.94.041(2). The term is not defined in the statute. The dictionary defines "confined" as "kept in confines." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 476 (1993). Therefore, the RCW 9.94.041(2) applies to those who are *kept* in the confines of a county or local correctional institution.

A challenge to the sufficiency of the evidence to convict is a constitutional question this court reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Our Supreme Court in *Rich* explained this court's review on a sufficiency of the evidence challenge as follows:

> The State bears the burden of proving all the elements of an offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. To determine if sufficient evidence supports a conviction, we consider " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *beyond* a reasonable doubt.' " *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (some emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). A " 'modicum' " of evidence does not meet this standard. *Jackson*, 443 U.S. at 320.

*Id*. Where there is insufficient evidence to support a necessary element of the crime, we will reverse and remand to vacate the conviction and dismiss the charge with prejudice. *See State v. Smith*, 155 Wn.2d 496, 498, 120 P.3d 559 (2005).

2.      Insufficient Evidence to Convict

Here, under both the statute and the jury instructions, Palmer was not confined to a county or local correctional institution. *See* RCW 9.94.041(2). Based on the record, there is no evidence that Palmer was confined or kept in the confines of a county or local correctional institution at the time that the marijuana was found on him. Deputy Earhart testified that he transported Palmer to the Clark County jail parking lot. In the parking lot, Earhart needed to fill out a form called a "Prebook" and a probable cause statement in order for Palmer to be booked in the Clark County jail. 2 VRP (May 20, 2019) at 1882. Also, in order to get booked, Earhart needed to walk Palmer into a "sally port" and wait in line to be booked. 2 VRP (May 20, 2019) at 182. Earhart completed neither requirement.

While Deputy Earhart was trying to fill out the forms, Palmer stated that he urgently needed to use the restroom. In order to accommodate Palmer's need to urinate, Earhart did not finish his forms but walked him inside. Earhart and a corrections deputy took him to the bathroom. While keeping watch over Palmer, Earhart and Deputy Hatcher noted that Palmer was doing something other than urinating, so Hatcher conducted a strip search of Palmer. Hatcher found marijuana on Palmer. After the strip search, Earhart could not book Palmer into the jail but had to take Palmer back to the hospital because Palmer told Earhart that he had swallowed a foreign object. It was not until after the hospital visit that Earhart took Palmer back to the Clark County jail for booking.

Even when the evidence is viewed in the light most favorable to the State, no rational trier of fact could have found that Palmer was confined or kept in the Clark County jail at the time that the marijuana was found. Palmer had not yet been booked at the jail and was taken by Deputy Earhart, not the correctional deputy, to the hospital. Thus, we hold that there is insufficient

14

evidence to support Palmer's conviction for possession of a controlled substance by prisoners or jail inmate. Therefore, we reverse the conviction, and remand to the trial court to dismiss the charge with prejudice and resentence Palmer.

## STATEMENT OF ADDITIONAL GROUNDS

A. RIDE-ALONG PERSON

Palmer challenges the trial court's denial of his request to allow the ride-along person, who accompanied Deputy Earhart, to testify. Palmer argues that "[m]y attorney and I requested that this 'ride along' be located because he was an important person in this trial. The judge decided that he did not need to be involved even though my attorney and I requested his testimony." SAG at 1.

Under CrR 4.7(b)(1), defendants must disclose the names and addresses of intended witnesses, as well as the substance of their testimony, no later than the omnibus hearing. Sanctions for violating CrR 4.7 are within the discretion of the trial court. CrR 4.7(h)(7); *State v. Salgado-Mendoza*, 189 Wn.2d 420, 428, 403 P.3d 45 (2017). We review such decisions for manifest abuse of discretion. *State v. Ruelas*, 7 Wn. App. 2d 887, 896, 436 P.3d 362, *review denied*, 194 Wn.2d 1015 (2019).

Here, Palmer fails to show what the ride-along would have testified to or how that testimony would have affected the outcome of the case. Also, there was no late disclosure of the ride-along person by the State that necessitated a delay in the trial because Palmer was in the vehicle with the ride-along person and knew of the ride-along person's existence. Therefore, the trial court did not abuse its discretion in denying the request on the first day of trial.

Palmer also argues that the arresting officer failed to mention while on the stand that he had a ride-along person present. But Deputy Earhart, the arresting officer, did mention that he had his daughter's fiancé with him at the time as a ride-along. Thus, Palmer's argument fails.

B.    ALLEGED THREATS BY THE ARRESTING OFFICER

Palmer states that "the arresting officer told me when I was in his car, 'You deserve to be in jail and I'm going to hit you with every charge I can.' When asked on the stand if he said this, his reply was, 'I may have said that. I don't remember.'" SAG at 1.

RAP 10.10(c) states, "Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." Here, Palmer merely states an alleged statement by the arresting officer. Beyond this statement, Palmer provides nothing further to inform the court of the nature of the alleged errors.

Because Palmer does not inform the court of the nature of the alleged error, we do not review this issue.

CONCLUSION

We affirm Palmer's conviction for possession of a controlled substance, reverse the conviction for possession of a controlled substance by a prisoner or inmate, and remand to the trial court to dismiss the possession of a controlled substance by a prisoner or inmate charge with prejudice and resentence Palmer.

No. 53376-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.